In re Bryan W. COLEGROVE and Marilyn S. Colegrove, dba Bryan Colegrove Logging, Debtors.

Bryan W. COLEGROVE and Marilyn S. Colegrove, dba Bryan Colegrove Logging, Plaintiffs,

v.

HOOPA TIMBER CORPORATION, Defendant.

Bankruptcy No. 1–80–00457.

Adv. Proceeding No. 1–80–0083.

United States Bankruptcy Court, N. D. California.

Feb. 27, 1981.

Leon A. Karjola, Eureka, Cal., for plaintiffs.

Francis B. Mathews, Eureka, Cal., for defendant.

## MEMORANDUM AND ORDER RE JURISDICTION AND NOTICE OF PRE–TRIAL

CONLEY S. BROWN, Bankruptcy Judge.

On May 14, 1980 the above entitled debtors filed a petition with this Court pursuant to Chapter 11 of the Bankruptcy Code (being Case Number 1–80–00457). Shortly thereafter on July 2, 1980, the debtors filed this Adversary Proceeding. Essentially this complaint alleges that the plaintiffs entered into a contract with the Hoopa Timber Corporation for certain lumber operations and that the Hoopa Timber Corporation breached the contract to the damage of the plaintiffs and said breach was responsible for the bankruptcy filing.

There was an answer and a pre-trial hearing. Since part of the answer claimed there was no jurisdiction in this Court, briefing time was given on the issue of jurisdiction and nothing further was done at the pre-trial.

█ The essence of the objection to jurisdiction is that the Hoopa Indian Tribe is by treaty, a sovereign nation and Congress has passed no law giving any of the Courts of the United States the power to try a case against the Hoopa Valley Indian Tribe or its subsidiary, the Hoopa Timber Corporation. Indeed it is alleged that no court has jurisdiction to hear this case.

Extensive briefing was done and a number of cases were cited that related to cases in which the Indian Tribe itself was sued and it would not appear that these cases are authoritative in our circumstance since the Indian Tribe is not a party to this suit as the only defendant is the Hoopa Timber Corporation. The question is whether this entity created by the tribe can be sued in a state or federal court or, to put it another way, does the tribe's sovereign immunity apply to the entity it created, the Hoopa Timber Corporation.

Argument is made that the Hoopa Timber Corporation is a corporation by estoppel. There are not considered to be sufficient allegations in the complaint or answer or by stipulation of facts at this time to determine the situation with certainty on that issue. It is determined that trial must be held in order to have the full facts disclosed to see if evidences would hold the entity known as the Hoopa Timber Corporation to be a corporation by estoppel rather than some type of a subordinate economic entity which could claim for itself the sovereign immunity of the tribe.

The answer attaches as an exhibit a copy of the charter of the Hoopa Timber Corporation which by its terms is to become effective on November 11, 1976. Paragraph One of the charter reads, "*Purpose and Powers*, the purpose for which this corporation is formed is to engage in any commercial, industrial or other enterprise, having as its object the development of natural resources of the tribe, including but not limited to, the propagation, processing and sale of timber within the boundaries of the Hoopa Valley Reservation. In pursuit of this end, the corporation shall have the power to assign, transfer or otherwise dispose of, trade, deal in and with goods, wares, merchandise, of every class and description."

The answer also contains a copy of an amendment to the charter of the Hoopa Timber Company which was approved April 20, 1978. This amendment changes the wording in relation to purpose and powers as follows, "the purpose for which the corporation is formed is to engage in commercial, industrial or other enterprise, having as its objective the development and disposition of assets of the corporation which they have acquired, including but not limited to, the propagation, processing and sale of timber within the boundaries of the Hoopa Valley Reservation. In pursuit of this end, the corporation shall have the power to assign, transfer, or otherwise dispose of trade, deal in and with goods, wares, and merchandise of every class and description."

The original charter in relation to purpose and powers indicates in part that the corporation has "as its objective the development of natural resources of the tribe." This would seem to indicate that while the corporation could contract, its contract involved tribal property.

The amendment of April, 1978 indicates that the purpose of the corporation is to enter into enterprises having as its objective "the development and disposition of assets of the corporation which they have acquired." This then is not now a corporation subordinate to the tribe dealing in tribal property, but it is an entity which is now dealing in its own acquired assets. In this case, it is a timber asset and the allegation is made that the tribe did sell the timber in question to the Hoopa Timber Corporation. This amendment to the charter and the providing of assets to the corporation made it an independent body not now dealing in tribal property or able to avail itself of tribal immunity.

█ Defendant makes a point in his argument that in chartering the corporation, the tribe did not put in words that it gave the corporation authority to sue and be sued as an indication that without so saying they negated that position. As a practical mat-

ter, that is the general situation in the formation of any business entity, and if they had an intent not to make an independent body, it is more likely that they would have indicated that the entity they created did not have the ability to sue or be sued. So also, their argument does seem weak when they indicated that the tribe or Tribal Counsel maintains control by its ability to change the officers or make-up of their created entity. This is essentially no different from the control of the major stockholders in any corporation.

Defendant also tries to indicate that this is not a civil rights matter because this type of action is not appropriate solely pursuant to their constitution's Article VIII Section 1(h). They further contend that no other civil rights are involved or actions available because the tribe did not consent to the Indian Reorganization Act of 1934, but as stated in *Daly et al. v. United States of America et al.*, 8th Cir., 483 F.2d 700 (1973) at page 705 "Second, the District Court lacked jurisdiction because the tribe did not consent to the Indian Reorganization Act of 1934, 25 U.S.C. Section 461, et seq. There is no merit to this argument. This action was brought under the Indian Civil Rights Act, 25 U.S.C. Sections 1301–1303, and the provisions of that act apply to all Indian Tribes subject to the jurisdiction of the United States which possess powers of self-government. See, 25 U.S.C. Sections 1301–1302. The Crow Creek Sioux Tribe possesses these powers and its consent to the 1934 Act is unnecessary."

Civil rights today seem to be most readily thought of in relation to some type of discrimination relating to age, sex, color, religion etc., but according to Volume 15 of American Jurisprudence, 2d at Page 281, civil rights are defined as, "A "civil right" has been defined as a privilege accorded to an individual, as well as a right due from one individual to another, the trespassing upon which is a civil injury for which redress may be sought in a civil action. It has been said that interference with a person's lawful conduct and actions is the violation of a civil right. Thus, a civil right is a legally enforceable claim of one person against another. No right that is unenforceable in a court of law or equity, in any court in the United States, can be classified as a civil right." It is obvious that a breach of contract suit is enforceable in some courts of law or equity in the United States, and it would thus appear that a person's civil rights would be abridged if it were possible to say that there is no forum in the world that can handle this particular situation.

The creation of laws in relation to bankruptcy are provided in Article One of the Constitution which authorizes Congress to make uniform laws in relation to bankruptcy. Pursuant to the Constitution, Congress did enact the new Bankruptcy Code. In 28, U.S.C.A. Section 1471, Congress granted original but not exclusive jurisdiction of all cases under the Bankruptcy Act to the United States District Courts over all civil procedures arising under or related to cases under the Bankruptcy Code and further provides that the Bankruptcy Court shall then exercise the jurisdiction conferred on the District Courts. From the allegations in this case, there is no question but what this matter comes before us under and relating to the bankruptcy filing.

There is no allegation that there is or is not any Tribal Court provided to hear matters of this type and this Court would thus assume that there is no such Tribal Court. If there is such Tribal Court then it would be one created under the laws or treaties of the United States and jurisdiction to try matters would thus be in the Bankruptcy Court according to 28 U.S.C.S. Section 1471. If there is no such Tribal Court, then according to defendant's position, there is no court in the world with jurisdiction to try this alleged breach of contract case. This is seen to be against the civil rights of the plaintiffs. As there must be a forum, this Court has jurisdiction.

IN LIGHT OF THE ABOVE, the Court determines that it does have jurisdiction to proceed with this case and that further pre-trial relating to all the issues is hereby set for April 2, 1981 at 10:00 a. m. before

this Court in its courtroom in the Post Office Building at Fifth and H Streets in Eureka, California.