In re Raymond J. SHAPE and Mary Jane Shape, Debtors.

Irene Fitzsimmons GILBERT; Kay Gilbert Smith; Lewis Leon Gilbert; Sandra Lee Gilbert Vaile and Gwen Gilbert Mummey, Plaintiffs,

v.

Raymond J. SHAPE and Mary Jane Shape, Defendants.

Bankruptcy No. 482–00102.
Adv. No. 482–0061.

United States Bankruptcy Court,
D. Montana,
Great Falls Division.

July 11, 1982.

John P. Moore, Frisbee, Moore & Stufft, Cut Bank, Mont., for plaintiffs.

C.L. Overfelt, Great Falls, Mont., for defendants.

## ORDER THAT AUTOMATIC STAY BE LIFTED AND CANCELED ON AUGUST 21, 1982

ORVILLE GRAY, Bankruptcy Judge.

At Great Falls, district aforesaid, before ORVILLE GRAY, Bankruptcy Judge, on this 21st day of July, 1982.

Complaint was filed on May 6, 1982, by the plaintiffs asking that they be granted relief from the automatic stay imposed by 11 U.S.C. § 362, and that the defendants be required to relinquish possession of certain lands in question. The matter came on regularly for trial at Great Falls, Montana, on June 1, 1982, at which time John P. Moore, Esq., appeared on behalf of plaintiffs and C.L. Overfelt, Esq., on behalf of defendants. And, it was stipulated in open court that the matter would be submitted on briefs to the Court. The Court thereafter granted permission to the Milk River Production Credit Association to submit briefs, and the Fort Belknap Indian Community, a tribal government, was granted permission to file a brief amicus curiae. All briefs have now been submitted, and the matter is at issue. The Court has considered all of said briefs and the files and records herein.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This suit involves contested property rights to certain lands in Blaine County, Montana, situated on the Fort Belknap Indian Reservation. They are the subject of a written "lease and option to purchase" dated September 29, 1979, and entered into between the plaintiffs as lessors (vendors?) and the defendants as lessees (vendees?). The defendants filed a petition for relief for reorganization under Chapter 11 of the new Bankruptcy Code on April 6, 1982, and are now operating as debtors-in-possession. They have not yet filed a plan for reorganization and have until September 7, 1982 to do so. The dispute arises as to whether this is a valid lease-option, and if there is an interest or equity of defendants in the said lands so as to be an asset of this estate.

The thing that makes this case novel and distinguished from usual Chapter 11 proceedings is that the land in question is located on an Indian Reservation, held in trust by the United States Government through its instrumentality, the Bureau of Indian Affairs. Some of the defendants are Indian members of the Fort Belknap Indian Community having a one-fourth to a one-eighth Gros Ventre Indian blood respectively. This is a question of first impression in this Court under the new Code, (Bankruptcy Reform Act of 1978), although I did decide a case involving somewhat similar questions under the Bankruptcy Act of 1898. This was the C & M Construction Co., involving property on Fort Peck Reservation.

The basic questions that must be decided by this Court:

I. Does this Court have jurisdiction over Indian trust lands involved in a Bankruptcy Estate though located on an Indian Reservation, i.e., does the tribal sovereign immunity preclude the Bankruptcy Court's jurisdiction over such property, if otherwise within the purview of the Bankruptcy Code. If this question is answered in the negative, this matter is concluded—if, in the affirmative I must go on to the next question.

II. Is this a valid *"lease-option"* and hence an asset of this estate to be marshalled for benefit of creditors, and is it under control of the debtor-in-possession, or a trustee, if the matter is later converted to a Chapter 7 proceeding? Or, is it void because of lack of proper approval by the BIA—i.e., was it trust property and were plaintiffs incompetent to make a binding commitment of sale and long term lease, so that it is not an asset of the bankruptcy estate?

## I.

## SOVEREIGN IMMUNITY AND JURISDICTION OF BANKRUPTCY COURT.

■ Congress, in passing the new Bankruptcy Code with special reference to 28 U.S.C. § 1471, gave very broad jurisdiction to the Bankruptcy Court, i.e., "the District Court shall have original and exclusive jurisdiction of all cases under Title 11." It goes on to provide that the Bankruptcy Court for the District in which the case under Title 11 is commenced, shall exercise all the jurisdiction conferred by this section on the District Courts. It then goes on to state finally under sub paragraph (e) as follows: "The Bankruptcy Court in which the case under Title 11 is commenced shall have exclusive jurisdiction of all the property, *wherever located,* of the debtor as of the commencement of such case." I find it is clear that this Court was granted such broad jurisdiction by Congress as commented on at length in Sec. 3.01 of Colliers, included in defendants' brief, and that it would extend to the lands in question if not

forbidden by the specific question in this case involving tribal sovereign immunity. As to this aspect, I feel the *Sandmar* case is controlling. *In re: The Sandmar Corp.,* debtor; District of New Mexico, July 31, 1981—12 B.R. 910, 7 BCD 1327. This case was quite similar to the one at Bar. Sandmar, a non-Indian corporation, leased improvements on land within the Navajo Reservation from the Navajo Tribe. About ten days after the corporation filed a Chapter 11 petition, the tribe's staff attorney along with ten or twelve other persons, some of whom were armed Navajo tribal police, arrived at the premises of the debtor and physically took possession of the premises. At that time, and before actual possession occurred, officers of the debtor advised the tribal officials that a proceeding had been filed under Chapter 11 of the Bankruptcy Code. Despite this notice, the tribal officials proceeded to take possession of the premises and all the assets. The debtor was directed to remove himself from the premises, so he packed his personal belongings into his vehicle and left.

After noting that the case was one of first impression under the Bankruptcy Code, the Bankruptcy Court went on to say:

"The primary question in this case is whether this Court has jurisdiction over the Navajo Tribe in view of the Tribe's retained sovereign immunity. All parties agree that the Indian Tribes enjoy a degree of immunity from suit by virtue of their status as a quasi-sovereign nation. It is further agreed that that immunity can be limited at any time by act of Congress. Remaining is the question of whether, in the absence of a statute which specifically limits that immunity, the Tribe's immunity is total or can be limited by other circumstances and if so, is it limited here."

The Court when on to show that tribal immunity may be withdrawn as a result of their dependent status. It relied on two 1978 Supreme Court cases stating as follows:

"The sovereignty that the Indian tribes retain is of a unique and limited charac-

ter. It exists only at the sufferance of Congress and is subject to complete difeasance. But until Congress acts, the tribes retain their existing sovereign powers. In sum, Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, *or by implication as a necessary result of their dependent status.* (Emphasis added.) *Oliphant v. Suguamish [Suquamish] Indian Tribe,* 435 U.S. 191 [98 S.Ct. 1011, 55 L.Ed.2d 209] (1978) and *United States v. Wheeler,* 435 U.S. 313, 315 [98 S.Ct. 1079, 1081, 55 L.Ed.2d 303] (1978)."

I find the following language of the *Sandmar* case particularly apropos:

"It is obvious that the Congress has authority to establish uniform laws on the subject of bankruptcy throughout the U.S. Const. Art. I, Sec. 8(4). No statute or treaty has been cited which gives the Navajo Tribe or any other Indian tribes authority to litigate bankruptcy issues with non-Indians.

"The most succinct and current statement of the law from the Supreme Court appears to be as follows:

"The areas in which such implicit divestiture of sovereignth has been held to have occurred are those involving the relations between an Indian tribe and nonmembers of the tribe.... 49 U.S. L.W. at 4302."

"To conclude this point, this case does not involve an internal matter but rather a dispute between the Tribe and the non-Indian debtor, Sandmar, involving a comprehensive and uniform Federal Law. The Tribe has conceded it has no bankruptcy laws and has never previously handled any bankruptcy in any of its courts. The only form for resolution of this dispute is the United States Bankruptcy Court."

"The stay provided by 11 U.S.C. Sec. 362. applies to any 'entity'. The term entity includes a governmental unit. 11 U.S.C. Sec. 101(14)."

I, therefore, find that this Bankruptcy Court sitting in the District of Montana, does have jurisdiction over the Gros Ventre and Assiniboine Tribes, acting as a Governmental entity known as the Fort Belknap Indian Community, and the property here involved.

## II.

I must then proceed to the final question of this controversy: Is this a valid "lease-option" so as to be an asset of this estate? Can it be marshalled for benefit of creditors by the debtor-in-possession (or trustee if converted to a Chapter 7)? I find that this question must be answered in the negative.

It is clear that lands plaintiffs claim, described on Exhibit "A" attached to the "Lease and Option to Purchase" are restricted allotted Indian lands located on the Fort Belknap Indian Reservation, Blaine County, Montana. Such lands are held in trust by the United States, through its agency the Bureau of Indian Affairs, for the benefit of the plaintiffs, who are members of the Gros Ventre Tribe. No Patent in fee has been issued to plaintiffs for any of these lands. The trust patents, granted by the United States when these lands were allotted, restricted their alienation in accordance with 25 U.S.C. Secs. 331, 348, and 462. By Congressional Act, (25 U.S.C. § 392) approval or consent of the Secretary of Interior (the Department of the Government in which the BIA is located), is specifically required *before* there can be an alienation of restricted Indian allotments. In this case, it is clear no such approval or consent has ever been given, as of date of filing the petition for relief in Bankruptcy. Whether such a consent or approval might be or could be given in the future is not pertinent. The pertinent fact is that it was not in existence as of time of bankruptcy.

Plaintiffs cannot transfer this land on their own. Title can only be transferred by the trustee, in effect the United States Government through its appropriate agencies. I therefore find that this option provision is "absolutely null and void" under 25 U.S.C. Sec. 348.

It is well established that the unauthorized sale by an allottee (Indian) of re-

stricted or trust land is absolutely void regardless of the good faith of the grantee. I feel the argument made by Mr. Lamebull in behalf of the tribe is correct, as follows:

"Federal law is clear that any transaction which affects restricted trust lands is subject to the approval of the Secretary of the Interior or his authorized representative. 25 U.S.C. 392, 393. Further, leasing of trust lands is regulated pursuant to 25 CFR, 131.1 et sec. It is therefore clear that any transaction involving trust property is exclusively regulated by the Federal Government."

I find that in bankruptcy procedure, the debtor-in-possession (or a trustee if the matter should be converted to a Chapter 7 proceeding) has no better title than does the debtor himself, but rather steps into the debtor's shoes. Since I find the transaction is null and void as to Mr. Shape personally, it is also null and void as to the bankruptcy estate in the person of Mr. Shape, the debtor-in-possession (trustee).

 I find therefore that the most that passed to this bankrupt estate was debtors' interest in a void contract, which is in effect nothing. Thus, there is no property right in this estate over which this Court can exercise administration and control. There is no asset to marshall for benefit of creditors. However, as set out in the first part of this order, this Court and only this Court, has jurisdiction to make this decision, under the provisions of the new Bankruptcy Code.

I therefore feel that the bottom line is that this Court cannot change a void contract as to Mr. Shape personally, into a valid contract as to Mr. Shape, wearing the hat of debtor-in-possession (or trustee). I feel that this "lease-option" as it applies to the real property in question, is void, and therefore not an asset of this estate. That the stay imposed by 11 U.S.C. § 362 as to any such property must therefore be lifted and terminated, but under the terms and conditions, as follows:

I also make no ruling as to the argument advanced that the Shapes had relinquished or had been divested of any property rights prior to the filing of their petition in bankruptcy. I do not need to decide that question in reaching this decision. This decision will apply only to the real estate involved in Blaine County, and I make no ruling in this decision as to any personal property, such as cattle or farm machinery.

I will also delay the effect of this order for thirty (30) days, and allow defendants thirty (30) days to vacate the real property involved, and remove their personal property.

Further, I make no ruling at this time as to the status of any crops growing on said lands which are about ready for harvest, and whether they may be an asset of this estate at this time.

WHEREFORE, IT IS ORDERED:

1. That the automatic stay imposed by 11 U.S.C. § 362 shall be lifted and cancelled on August 21, 1982, and that defendants have until that date to vacate the real estate involved.

2. That copy of this order be mailed forthwith to C.L. Overfelt, Esq., John P. Moore, Esq., Jack Lewis, Esq., John P. Paul, Esq., and Francis X. Lamebull, Esq.