LOWER BRULE CONSTRUCTION CO., Plaintiff,

v.

SHEESLEY'S PLUMBING & HEATING CO., INC.; Standing Rock Housing Authority; West River Telephone; Eva's Self Service: Nebs; Rosebud Mfg.; Midcon Equipment Co.; Northwest Pipe Fittings, Inc.; Acme Welding; Todd's Service; East Side Motel; Polar Gas; Atlas Concrete; McLaughlin Cenex; Stan Houston Equipment Co.; Mid–West Equipment Co.; B & D Supply; Mid America Steel; Tim's Service; Lampy Concrete; Hoff Ready Mix; Hogg Restaurant Supply; McLaughlin Coast To Coast; Mor–Gran–Sioux Electric; Dakota, Inc.; Bosch; Skelly; West River Lumber; Larson Lumber Company; Valley Gas & Equipment Rental; Triad, Inc.; Keller Excavation; Twin City Roofing; Western Wall and Ceiling; Dakota Fence; McGee Landscaping; Siegel Construction; Laib Realty; Wayne Perman; Ted Denks, d/b/a Eagle Nest Construction; Jensen Rock and Sand; Krider Equipment Co.; Farmer's Union; Al's Diesel Repair; Anderson Tire Co.; Fisher Sand and Gravel; Sweeney Brothers; State of North Dakota; Tri–County State Bank, Inc.; and United States of America, Housing and Urban Development, Defendants.

Civ. Nos. 87–3040, 87–3030.

United States District Court,
D. South Dakota, C.D.

March 30, 1988.

David L. Bergren, Bergren & Duffy Law Offices, Fort Pierre, S.D., for plaintiff.

Randall R. Hodge, Rapid City, S.D., for defendant Sheesley's Plumbing & Heating Co., Inc.

Mary Maywalt, James Wagenlander, Wagenlander & Associates, Denver, Colo., Terry L. Pechota, Finch & Viken Law Offices, Rapid City, S.D., for defendant Standing Rock Housing Authority.

Thomas E. Lee, Poches & Lee, Fort Pierre, S.D., for defendant McGee Landscaping, Inc.

C.J. Bormann, Mobridge, S.D., for defendant West River Lumber.

Ray P. Murley, Office of United States Attorney Sioux Falls, S.D., for defendant U.S. Housing and Urban Development.

Gary F. Colwill, Schmidt, Schroyer, Colwill & Barnett, Pierre, S.D., for Fischer Sand.

Paul O. Godtland, Chamberlain, S.D., for defendant Farmers Union Oil Co.

Brent A. Wilbur, May, Adam, Gerdes & Thompson, Pierre, S.D., for defendant Valley Gas & Equipment Rental.

David J. Larson, Chamberlain, S.D., for defendant Tri–County State Bank.

David R. Vrooman, Sioux Falls, S.D., for defendant Stan Houston Equipment.

Mary T. Wynne, Rapid City, S.D., for Lower Brule Housing Authority.

Thomas F. Kelsch, Mandan, N.D., for Siegel Construction & Twin City Roofing.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

This action was commenced as an adversary proceeding in bankruptcy court. The bankruptcy court remanded the adversary proceeding to this Court by an interlocutory order of June 18, 1987. The defendants, Sheesley's Plumbing and Heating Co., Inc. (Sheesley's) and Standing Rock Housing Authority (Housing Authority) filed motions for leave to appeal the interlocutory order. On July 21, 1987, this Court granted those motions. This opinion will address the issues on appeal.

### FACTS

This action arose out of a construction contract entered into between the Housing Authority and the plaintiff, Lower Brule Construction Co. (Lower Brule), for the renovation of a housing project known as the Douglas Skye Complex on the Standing Rock Sioux Indian Reservation in Fort Yates, North Dakota. Two other actions are pending before this Court on this matter, which shall be referred to only as they relate to this action. To guarantee Lower Brule's performance according to the terms of the contract, an irrevocable standby letter of credit was obtained by Lower Brule in the amount of $188,000 from Tri–County State Bank (Tri–Co.) with the Housing Authority as the beneficiary. The letter pro-

vided that Tri–Co. would pay the Housing Authority up to $188,000 upon the Housing Authority's documentary demand.

On April 24, 1987, the Housing Authority notified Lower Brule that there was a material default in the construction contract and a documentary demand was made upon Tri–Co. for payment of the funds under the letter of credit. Tri–Co. had received an earlier demand from a subcontractor of the project, Sheesley's, who claimed to be a third-party beneficiary of the letter. Tri–Co. responded to these demands for payment under the letter by filing an action in South Dakota state court to determine its rights and liabilities under the letter.

Following the commencement of the state court action, Lower Brule filed a Chapter 11 petition for relief in bankruptcy. Four days later, on May 8, 1987, the Housing Authority filed an action in this Court against Tri–Co., alleging wrongful dishonor of the letter. *Standing Rock Hous. Auth. v. Tri–County State Bank*, Civ. 87–3024. On May 14, 1987, Lower Brule commenced this adversary proceeding in bankruptcy court. Lower Brule requested that the bankruptcy court enjoin payment under the letter of credit pursuant to section 105(a) of the Bankruptcy Code.

On June 1, 1987, the Housing Authority filed a petition in this Court to remove the state court proceeding to this Court.[1] *Tri–County State Bank v. Sheesley's Plumbing and Heating Co., Inc.*, Civ. 87–3030.

Following a hearing on Lower Brule's application for a preliminary injunction, the bankruptcy court ordered that each of the actions in this Court be enjoined from further proceedings.[2] In addition, payment under the letter of credit was enjoined and the adversary proceeding was remanded to this Court. *See* Order of the Bankruptcy Court, Adversary No. 87–3013, June 18, 1987.

On appeal, the defendants and appellants, Sheesley's and the Housing Authority, raise two issues. The Housing Authority argues that this Court lacks jurisdiction over the adversary proceeding because exclusive jurisdiction over the action resides in tribal court. Both appellants argue in addition that the bankruptcy court did not have authority to enjoin payment under the letter of credit under 11 U.S.C. § 105(a).

## JURISDICTION

The Housing Authority attacks the interlocutory order on the grounds that the bankruptcy court lacked jurisdiction to make the order. As will be discussed more fully below, the bankruptcy judge determined that section 157 of the Bankruptcy Code prevented the court from hearing and deciding the adversary proceeding because the action was not a "core proceeding." 11 U.S.C. § 157. Section 157, however, does not bar a bankruptcy court from issuing interlocutory orders. *See infra* n. 5. Thus, the bankruptcy court was acting within its authority in issuing the preliminary injunction assuming that no other court had exclusive jurisdiction over the action. The Housing Authority takes issue with this statement by arguing that exclusive jurisdiction over the adversary proceeding in bankruptcy rested in the tribal court of the Standing Rock Sioux Tribe.

The Housing Authority cites *Iowa Mutual Ins. Co. v. LaPlante* in arguing that the tribal court should have been given the first opportunity to assert jurisdiction over the contract dispute. —— U.S. ——, 107 S.Ct. 971, 978, 94 L.Ed.2d 10 (1987). In *LaPlante*, an insurer brought an action in federal district court seeking a declaration that the insurer had no duty to insure

---

**1.** The state court action was filed on April 30, 1987 in the Circuit Court for the Fourth Judicial Circuit, County of Brule, State of South Dakota and numbered 87–42. On removal, the action was renumbered Civ. 87–3030.

**2.** At the time of the bankruptcy court order of June 18, 1987, the following two actions were pending in this Court:

1) *Standing Rock Hous. Auth. v. Tri–County State Bank*, Civ. 87–3024 (action for wrongful dishonor of letter of credit); and

2) *Tri–County State Bank v. Sheesley's Plumbing and Heating Co., Inc. et al.*, Civ. 87–3030 (action removed to this Court to determine rights and liabilities under the letter).

members of the Blackfeet Indian Tribe, located on the Blackfeet reservation in Montana, under a contract of insurance. The insurer alleged that jurisdiction was based on diversity of citizenship. The dispute arose out of an accident occurring on the Blackfeet reservation. *Id.* at 974. After recognizing the need to encourage tribal self-government, the Court agreed with the decision of the United States Court of Appeals for the Ninth Circuit to follow *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), for the rule that the question of jurisdiction in such cases must first be decided in tribal court. *Id.* The Court stated: "[P]etitioner must exhaust available tribal remedies before instituting suit in federal court ..." *Id.* at 107 S.Ct. at 978.

The decision of the Supreme Court in *LaPlante* does not support the Housing Authority's argument that the tribal court of the Standing Rock Sioux Tribe had exclusive jurisdiction. *LaPlante* adopted the exhaustion rule enunciated in *Crow Tribe* noting that it was a matter of comity. *LaPlante,* 107 S.Ct. at 976 n. 8. The Court analogized the exhaustion rule to the rules governing abstention, noting: "[E]ven where there is concurrent jurisdiction in both the state and federal courts, deference to state proceedings renders it appropriate for the federal courts to decline jurisdiction in certain circumstances." *Id.* Moreover, the court in *Crow Tribe* noted that the exhaustion requirement was not without exceptions. 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21; *see also LaPlante,* 107 S.Ct. at 978 n. 12.[3]

Since *LaPlante* was decided several U.S. circuit courts have held that federal courts should defer to tribal court remedies as a matter of comity. *See Brown Const. Co. v. Washoe Hous. Auth.,* 15 Indian L.Rep. 2007, 2007 (10th Cir.1988); *United States v. Turtle Mountain Hous. Auth.,* 816 F.2d

1273, 1276–77 (8th Cir.1987); *Wellman v. Chevron U.S.A., Inc.,* 815 F.2d 577, 578–579 (9th Cir.1987). Courts of the United States District Court for the District of South Dakota have also followed *LaPlante.* See *Palmer v. Yankton Sioux Tribe,* 15 Indian L.Rep. 3001, 3001 (D.S.D.1987); *Federal Land Bank v. Reeves,* 14 Indian L.Rep. 3071, 3072–73 (D.S.D.1987). No court has decided whether the exhaustion requirement advanced in *Crow Tribe* and *LaPlante* is applicable to an action for relief filed in bankruptcy court.

The adversary proceeding in which the interlocutory order was issued arises out of a construction project on the Standing Rock Sioux Indian Reservation. The plaintiff in the action is the Lower Brule Construction Co., a subsidiary of the Lower Brule Sioux Tribe, and the defendants are non-Indian subcontractors on the project and the Housing Authority, a subsidiary of the Standing Rock Sioux Tribe.

The "exhaustion rule" announced in *Crow Tribe* and reaffirmed in *LaPlante* is inapplicable to the present facts. Despite the strong language in *LaPlante* indicating that tribal courts have unlimited civil jurisdiction, 107 S.Ct. at 976, this jurisdiction does not extend to bankruptcy proceedings. Jurisdiction of tribal courts is unlimited only in relation to matters of Indian self-government. Requiring tribal courts to perform as bankruptcy courts by requiring the tribal court to administer a debtor's estate would not promote self-government among the Indian tribes, even assuming that a body of "bankruptcy" law existed in tribal court. Thus, Indian tribal courts have neither exclusive nor concurrent jurisdiction to hear bankruptcy proceedings. Because application of the exhaustion rule to cases filed in bankruptcy court would not serve the interests of comity or judicial economy and would be an exercise in futility, the Court holds that the

---

**3.** The Court in *National Farmers Union Ins. Cos. v. Crow Tribe* noted:

We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction 'is motivated by a desire to harrass or is conducted in bad faith,' (citation omitted), or

where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21.

exhaustion rule of *Crow Tribe* and *La-Plante* does not apply to adversary proceedings in bankruptcy.

This result is analogous to the holding of the United States Supreme Court in *Oliphant v. Suquamish Indian Tribe*. In that case, the Court decided that tribal courts do not have jurisdiction to prosecute non-Indians for criminal offenses. 435 U.S. 191, 212, 98 S.Ct. 1011, 1022, 55 L.Ed.2d 209 (1978). In reaching this result, the Court noted that there are "inherent limitations on tribal powers." 435 U.S. at 209, 98 S.Ct. at 1021. In the absence of authorization from Congress for asserting such jurisdiction, the powers of the tribe must yield in keeping with the principle that the tribe must forfeit "full sovereignty in return for the protection of the United States." 435 U.S. at 211, 98 S.Ct. at 1022. The protection of non-Indian debtors by operation of the automatic stay of section 362 of the Bankruptcy Code must similarly figure into the equation, limiting the sovereignty of Indian tribes to assert jurisdiction over bankruptcy proceedings.

In *Crow Tribe*, the Court began its analysis with the assumption that the Tribe in that case once possessed the power to decide disputes involving non-Indians that would constitute "federal questions" under 28 U.S.C. § 1331. 471 U.S. at 852, 105 S.Ct. at 2452. The Tribe argued in that case that the operation of section 1331 to confer district courts with jurisdiction to hear federal questions would deprive the Tribe of some aspect of its inherent sovereignty. 471 U.S. at 852–53, 105 S.Ct. at 2452–53. The Court advanced the exhaustion requirement in *Crow Tribe* so that the sovereignty of Indian tribes would not be limited "automatically" upon the filing of a suit in federal district court. 471 U.S. at 855, 105 S.Ct. at 2453. The Court decided that this determination would require "a careful examination of tribal sovereignty,

the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes" in the tribal court in the first instance. 471 U.S. 855–56, 105 S.Ct. at 2454. (footnote omitted). In this case, there is no allegation that the Standing Rock Sioux Tribe ever possessed the power to act as a bankruptcy court. The *Standing Rock Sioux Tribe Code of Justice* makes no reference to bankruptcy jurisdiction.[4] The Bankruptcy Code makes no reference to Indians or tribal courts and there is no Congressional grant of authority for Indian tribal courts to assume jurisdiction over bankruptcy proceedings.

At least three bankruptcy courts have had occasion to decide similar questions of law relating to the jurisdiction of bankruptcy courts over Indian tribes. In *In re Sandmar Corp.*, a bankruptcy court first addressed the issue of whether a bankruptcy court has jurisdiction over an Indian tribe to find the Tribe in contempt for violating the automatic stay of section 362 of the Bankruptcy Code. 12 B.R. 910, 911–12 (Bankr.D.N.M.1981). The issue for determination was phrased as follows: "[W]hether, in the absence of a statute which specifically limits that immunity, the Tribe's immunity is total or can be limited by other circumstances and, if so, is it limited here." 12 B.R. at 912. In holding that the tribe's sovereign immunity was limited, the court reasoned that an aspect of their sovereignty was implicitly preempted *"as a necessary result of their dependent status."* 12 B.R. at 913 (citing *Oliphant v. Suquamish* (sic) *Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978) and *United States v. Wheeler*, 435 U.S. 313, 315, 98 S.Ct. 1079, 1081, 55 L.Ed.2d 303 (1978)). The court went on to hold that the "real crux" of the matter was that allowing tribal courts to resolve bank-

---

4. Section 1–107 provides:

The Court shall have civil jurisdiction over any matter where one party to the action shall be an Indian, or a corporation or entity owned in whole or in substantial part by any Indian or Indian tribe, or a corporation or entity chartered by an Indian tribe, and:

(a) The cause of action arises under the Constitution or laws of the Standing Rock Tribe; or

(b) The transaction or occurrence giving rise to the cause of action occurs on the Standing Rock Indian Reservation.

*Standing Rock Sioux Tribe Code of Justice,* § 1–107 (rev. 1982).

ruptcy cases involving non-Indians would be external to the Tribe's long-recognized authority over its internal relations. 12 B.R. at 914. In addition, the *Sandmar* court noted that tribal courts have no body of bankruptcy law to apply and permitting tribal courts to resolve bankruptcy matters would destroy the purpose of uniformity in administering the Bankruptcy Code. 12 B.R. at 915.

The opinion of the *Sandmar* court has been followed on one occasion. *See In re Shape*, 25 B.R. 356, 358–59 (Bankr.D.Mont. 1982). In addition, in an adversary proceeding growing out of a contract dispute much like this case, a bankruptcy court has held that the bankruptcy court has jurisdiction over a corporation formed by an Indian tribe, reasoning only that *some* court must have jurisdiction to decide the dispute. *See In re Colegrove*, 9 B.R. 337, 339 (Bankr.N. D.Cal.1981).

■ While each of these decisions was decided before the Bankruptcy Amendments of 1984 and before the opinions of the United States Supreme Court in *La-Plante* and *Crow Tribe*, they nevertheless support the holding of the Court that the bankruptcy court has jurisdiction to issue the interlocutory order in the adversary proceeding. *Sandmar* was decided when 28 U.S.C. § 1471 provided that bankruptcy courts had original but not exclusive jurisdiction of all civil proceedings arising under Title 11. In providing that the U.S. district courts shall now have this grant of jurisdiction, the 1984 amendments strengthen the implication that Congress intended U.S. district courts, rather than Indian tribal courts to assume a greater role in the administration of the Bankruptcy Code.

For all these reasons, the Court holds that the bankruptcy court had jurisdiction to issue the interlocutory order of June 18, 1987. The exhaustion rule of *Crow Tribe* and *LaPlante* is inapplicable to cases and proceedings in bankruptcy.

5. Section 157(c)(2) provides that a bankruptcy court may hear and decide cases referred from

# ENJOINING PAYMENT UNDER THE LETTER OF CREDIT

*Jurisdiction of the Bankruptcy Court.*

In remanding the adversary proceeding to this Court, the bankruptcy court concluded without explanation that the action was a "related matter" under 28 U.S.C. § 157(b)(3). Section 157(b)(3) provides in part: "The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). While the term, "core proceeding," is nowhere defined in the Bankruptcy Code, section 157(b)(2) sets forth a nonexclusive list of proceedings that qualify as core proceedings. *See* 28 U.S.C. § 157(b)(2). Only core proceedings may be heard and decided by a bankruptcy court, unless the parties consent. "Otherwise related" proceedings filed in bankruptcy court cannot be decided by a bankruptcy judge unless the matter is referred to the bankruptcy judge by a district court, pursuant to 28 U.S.C. § 157(c)(2).[5]

The Bankruptcy Code was amended in 1984 to differentiate core proceedings from noncore proceedings in light of the opinion of the United States Supreme Court in *Northern Pipeline Constr. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Northern Pipeline Constr.*, the Supreme Court was concerned that state common-law actions were being decided by non-Article III courts although they were not directly related to the adjudication of a bankruptcy case. 458 U.S. at 84, 102 S.Ct. at 2878. Chief Justice Burger, dissenting, restates the decision of the Court as follows:

[A] "traditional" state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an "Art. III court"

a district court with the consent of the parties.

if it is to be heard by any court or agency of the United States.

458 U.S. at ¶ 2 (Burger, C.J., dissenting).

Cases construing 28 U.S.C. § 157 and the Supreme Court's opinion in *Northern Pipeline Constr.* define core proceedings. Noncore proceedings have been defined as "those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court." *Matter of Colo. Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir. 1984). Generally, state law contract actions have been characterized as noncore proceedings. *See In re Pierce*, 44 B.R. 601, 602 (D.Colo.1984); *In re Illinois California Express, Inc.*, 50 B.R. 232, 235–39 (Bankr.D.Colo.1985); *In re Morse Elec. Co., Inc.*, 47 B.R. 234, 237 (Bankr.N.D.Ind. 1985).

■ The adversary proceeding from which this appeal arose falls squarely within the category of a noncore proceeding. The Complaint contains the allegation that the Housing Authority breached the construction contract by making a demand for payment under the letter of credit when Lower Brule had substantially performed the contract. As this is a matter of state contract law, the complaint initiates a noncore proceeding in bankruptcy. In addition, when the adversary proceeding was filed, the Court was aware that the action might have been brought in state court or in district court because actions arising out of the same facts were pending before a state court and a federal court. Thus, the bankruptcy court was correct in concluding that the adversary proceeding was a "related matter" under section 157(b)(3). The bankruptcy court ordered that the adversary proceeding be remanded to this Court, rather than dismiss the action or abstain.

In that same order, payment under the letter of credit was enjoined.[6]

■ In addition to ordering that the adversary proceeding be remanded and payment under the letter of credit be enjoined, the bankruptcy court enjoined the Housing Authority and Tri-Co. from proceeding further in the action pending before this Court numbered Civ. 87–3024 and in the state court action, which had been removed to this Court and numbered Civ. 87–3030. While the bankruptcy court has the authority in some circumstances to enjoin parties from proceeding with actions in state court, section 105 does not authorize a bankruptcy court to enjoin parties from proceeding in a federal district court. This portion of the bankruptcy court's order of June 18, 1987 is dissolved.[7]

*The Letter of Credit*

■ Payment under the letter of credit should not have been enjoined. Proceeds of a letter of credit held by a creditor of the estate for the benefit of a third party are not property of the debtor's estate. *See In the Matter of Val Decker Packing Co.*, 61 B.R. 831, 839 (Bankr.S.D.Ohio 1986); *North Shore & Central Illinois Freight Co. v. American Nat'l Bank & Trust Co.*, 30 B.R. 377, 379 (Bankr.N.D.Ill. 1983). As the automatic stay operates to stay actions for possession of property of the estate, *see* 11 U.S.C. § 362(a)(3), the automatic stay does not operate to stay payment under a letter of credit.

■ Under 11 U.S.C. § 105(a), bankruptcy courts may enjoin proceedings by creditors against third parties that will adversely affect the debtor's estate.[8] *See In re Matter of Venegas Munoz*, 73 B.R. 283, 285 (Bank.D.Puerto Rico 1987). The crite-

---

6. The bankruptcy court had authority to grant the debtor's request for a preliminary injunction because such an interlocutory order does not constitute a "final order" which must be decided by a district court under section 157. *See In re Guy C. Long, Inc.*, 74 B.R. 939, 942 n. 5 (Bankr. E.D.Pa.1987); *In re Lion Capital Group*, 46 B.R. 850, 853–54 (Bankr.S.D.N.Y.1985).

7. The Court does not need to reach the issue of whether the proceedings in federal court might have been properly stayed under 11 U.S.C. § 362.

8. Section 105(a) provides in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105 (Supp. 1987).

ria wich must be met for an injunction to issue are as follows:

> (1) there must be a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize; (2) there must be a reasonable likelihood of a successful reorganization; (3) the relative harm between the debtor and the entity which would be restrained must be balanced; and (4) the public interest in successful bankruptcy reorganizations must be balanced against other competing societal interests.

*In re Guy C. Long, Inc.,* 74 B.R. 939, 944 (Bankr.E.D.Penn.1987). In this case, this Court must balance the harm alleged by Lower Brule against the interests of Tri–Co. and the beneficiary of the letter in deciding whether an injunction was properly issued.

■ The record does not show that payment under the letter would lessen Lower Brule's ability to reorganize or lead to a danger of imminent, irreparable harm to the debtor. In Count XIV of the Complaint, Lower Brule alleges that payment under the letter would cause harm to Lower Brule because additional claims involving the subcontractors on the project would have to be litigated. The reasoning underlying this allegation seems to be that the proceeds from the letter are insufficient to pay all claims and that these creditors would seek payment from the beneficiary of the letter. However, in filing a petition in bankruptcy, the debtor chose the correct forum for determining just such claims. The debtor alleges in Count XV of the Complaint that the debtor will be harmed because Tri–Co. will refuse to finance future projects if the letter of credit is paid according to its terms. However, even assuming this allegation to be true, there is no evidence on which this Court might determine the availability of other financing to Lower Brule. Thus, there is no basis on which this Court can conclude that payment of the letter would result in irreparable harm to the debtor.

An examination of the use of a letter of credit in commercial transactions underscores the Court's conclusion that no harm results to the debtor's bankruptcy estate upon payment. When a standby letter of credit is used, two parties seek to guarantee performance of an obligation by requiring that the party to perform the obligation obtain a letter of credit from a financial institution naming the other party as beneficiary. The letter sets forth the requirements for a demand for payment under the letter. Once a demand is made, usually by presenting documents indicating that there has been a breach of the underlying obligation, the bank pays out its own assets to the beneficiary of the letter. The bank may then claim indemnification under the contract, giving rise to a claim against the estate of the party purchasing the letter who is now in bankruptcy. However, this claim will not affect the assets of the estate because the automatic stay will operate to stay the action. *See In re Page,* 18 B.R. 713, 715 (D.D.C.1982). Payment of the letter will only result in a change in identity of the creditors of the debtor.

While a bankruptcy court has permitted an injunction to issue against a standby letter of credit secured by the debtor's property, *see In the Matter of Twist Cap, Inc.,* 1 B.R. 284 (Bankr.D.Fla.1979), recent decisions have not followed this court. *See In re North Shore & Central Illinois Freight Co. v. American Nat'l Bank & Trust Co.,* 30 B.R. 377, 379 n. 1 (Bankr.N. D.Ill.1983); *In re Page,* 18 B.R. 713 (D.D.C. 1982). Moreover, the letter of credit in this case, does not indicate that it is secured by the debtor's property. The only United States Court of Appeals to decide this issue has held that a bankruptcy court may not enjoin payment of a standby letter of credit that is not secured by the debtor's property. *See In the Matter of Marine Distributors, Inc.,* 522 F.2d 791, 795 (9th Cir.1975).

Letters of credit to guarantee performance of commercial obligations would be of limited utility if payment might be enjoined upon the filing of a bankruptcy petition. *See id.* at 794; *see generally* Baird, *Standby Letters of Credit in Bankruptcy,* 49 U.Chi.L.Rev. 130, 138–40 (1982). For this reason, public policy also supports the decision of the Court that the bankruptcy court

did not have authority under 11 U.S.C. § 105(a) to enjoin payment.

As this action alleges the same facts as the action on remand by order of this Court of this date, *see* Memorandum Opinion, Civ. 87–3030, the Court will abstain from deciding this action pursuant to 28 U.S.C. § 1334(c)(1).[9] The dispute in this action is a matter of state contract law and abstention in the interest of comity is appropriate.

The above shall constitute the findings of fact and conclusions of law of this Court. The order of the bankruptcy court of June 18, 1987 enjoining payment under the letter of credit is dissolved. In addition, the portion of that order enjoining proceedings in cases in this Court numbered Civ. 87–3030 and Civ. 87–3024 is also dissolved. The Court by its own order abstains from hearing this action so that the matter may be fully and fairly adjudicated in state court.

**9.** Section 1334(c)(1) provides: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).