106 F.3d 868
 97 Cal. Daily Op. Serv. 2616, 97 Cal. Daily
Op. Serv. 666,
97 Daily Journal D.A.R. 1077,
97 Daily Journal D.A.R. 4608
BURLINGTON NORTHERN RAILROAD COMPANY, Plaintiff-Appellee,
v.
Gladys RED WOLF; Randy Red Wolf; Dorrie Bull Tail; Dewey
Bull Tail; Valarie Red Wolf, Defendants-Appellants,
and
Ron Arneson, Honorable, Crow Tribal Court Special Judge, Defendant.
BURLINGTON NORTHERN RAILROAD COMPANY, Plaintiff-Appellee,
v.
Gladys RED WOLF; Randy Red Wolf; Dorrie Bull Tail; Dewey
Bull Tail, Defendants,
and
Ron Arneson, Honorable, Crow Tribal Court Special Judge,
Defendant-Appellant.
 Nos. 96-35254, 96-35265.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 16, 1996.
Decided Jan. 29, 1997.
As Amended on Denial of Rehearing and Rehearing En Banc
April 9, 1997.*
 
 Alexander Blewett, III, Hoyt & Blewett, Great Falls, MT; Joel E. Guthals, Wright, Tolliver & Guthals, Billings, MT, for defendants-appellants.
 Michele Odorizzi, Mayer, Brown & Platt, Chicago, IL, for plaintiff-appellee.
 Appeals from the United States District Court for the District of Montana, Jack D. Shanstrom, District Judge, Presiding. D.C. Nos. CV-96-00017-JDS, CV-96-00017-JDS.
 Before: WRIGHT, SCHROEDER and KLEINFELD, Circuit Judges.
 Opinion by Judge WRIGHT; Dissent by Judge KLEINFELD.
 EUGENE A. WRIGHT, Circuit Judge.
 
 
 1
 We must decide whether a district court may enjoin Indian tribal court proceedings before tribal remedies have been exhausted. We conclude that it may not because no exception to the exhaustion rule applies.
 
 BACKGROUND:
 
 2
 A jury in Crow Tribal Court awarded $250 million to the heirs of two tribal members killed when a Burlington Northern Railroad train hit their car at a railroad crossing on the reservation. Under the Crow Tribal Code, execution on the judgment was automatically stayed for ten business days. The Railroad moved to stay the judgment and to waive the Code's supersedeas bond requirement pending its appeal to the Crow Court of Appeals. The trial court denied the motion and ordered the Railroad to post bond in the amount of the judgment plus interest as required by Rule 18 of the Crow Tribal Court.[1] The Railroad appealed that bond ruling. Before the tribal appellate court ruled on that question, the Railroad sought and received a temporary restraining order in federal court enjoining enforcement of the tribal court judgment.
 
 
 3
 The tribal trial court held a previously scheduled hearing regarding posting of a supersedeas bond, but the Railroad refused to post such a bond and presented no alternatives to secure the judgment. The trial court held that without the Railroad's participation it could not modify its previous order. The Tribal Court of Appeals declined to review the trial court's bond order until after that court entered final orders concerning the specific security required as a condition of staying the judgment. It provided guidelines for the trial court's determination of the appropriate bond or other security required and directed that court to stay all proceedings to execute on the judgment and any requirement for security during the pendency of any restraining orders issued by the district court. It further instructed the trial court to proceed to determine the appropriate form of security to be implemented when all federal restraining orders were lifted.
 
 
 4
 Meanwhile, the district court granted the Railroad's motion for a preliminary injunction against execution or enforcement of the tribal court judgment. The injunction was intended to "maintain[ ] the status quo and preserv[e] the court's jurisdiction should future federal litigation occur in this matter." The district court ordered the Railroad to post with the federal court a $5 million bond as security for the injunction, retained jurisdiction and stayed all further proceedings pending exhaustion of tribal remedies. The judgment creditors appeal the preliminary injunction.
 
 ANALYSIS:
 1. Standard of Review
 
 5
 We review de novo whether the court was required to abstain from granting the injunction because Indian tribal court remedies had not been exhausted. Burlington Northern R.R. v. Crow Tribal Council, 940 F.2d 1239, 1244-45 (9th Cir.1991) ("[T]he requirement of exhaustion of tribal remedies is not discretionary; it is mandatory."); Stock West Corp. v. Taylor, 964 F.2d 912, 920 (9th Cir.1992) (en banc) (conducting independent review of the applicable law and affirming abstention pending exhaustion of tribal court remedies).
 
 2. Exhaustion of Tribal Court Remedies
 
 6
 In matters over which tribal courts assert concurrent jurisdiction, exhaustion of tribal court remedies is required as a matter of comity. National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 857, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (1985). "At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 17, 107 S.Ct. 971, 977, 94 L.Ed.2d 10 (1987).
 
 
 7
 The Railroad argues that the tribal courts had an adequate opportunity to decide whether or not it must post a supersedeas bond. Its motion for a stay from posting a bond in tribal court was considered by both the tribal court and the tribal appellate court. It concedes, however, that there was no final ruling on the form and amount of security that would suffice to stay the judgment.
 
 
 8
 The district court acknowledged that tribal remedies had not been exhausted, but nevertheless exercised its injunctive power to maintain the status quo and to preserve its jurisdiction. As with any other exercise of federal jurisdiction, injunctive relief requires exhaustion of tribal court remedies unless there is an applicable exception to the exhaustion rule. National Farmers recognized certain exceptions to the exhaustion requirement:
 
 
 9
 We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction "is motivated by a desire to harass or is conducted in bad faith," cf. Juidice v. Vail, 430 U.S. 327, 338 [97 S.Ct. 1211, 1218, 51 L.Ed.2d 376] (1977) or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.
 
 
 10
 National Farmers, 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21; see also, Crawford v. Genuine Parts Co., Inc., 947 F.2d 1405, 1408 (9th Cir.1991), cert. denied, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992).
 
 
 11
 The Railroad does not argue that a National Farmers exception applies. But it does argue that further tribal court proceedings to determine the amount of a bond or the nature of other security would be futile because it could not risk posting a bond or other security in tribal court. It asserts as a reason for refusing to post bond in tribal court that alleged due process violations at trial might not be eligible for federal review if the judgment can be enforced on the reservation.[2] The Railroad argues that a federal court proceeding to enforce the judgment could provide its only opportunity to challenge the $250 million judgment. See Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1410 (9th Cir.) (holding that a foreign judgment cannot be enforced if it was obtained in a manner not in accord with due process), cert. denied, --- U.S. ----, 116 S.Ct. 519, 133 L.Ed.2d 427 (1995). By refusing to post a bond in tribal court, the Railroad hopes to force the judgment creditors to enforce the judgment in federal court against off-reservation assets.
 
 
 12
 The Railroad's "futility" argument cannot be construed as an exception to the exhaustion requirement. The National Farmers futility exception applies where exhaustion would be futile because of lack of adequate opportunity to challenge the court's jurisdiction. National Farmers, 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21 . The judgment creditors here agreed to condition the supersedeas bond upon completion of all available federal review. Regardless of the extent of review available, it may not be said that there is inadequate opportunity to challenge the court's jurisdiction when, as here, federal review of tribal court jurisdiction is assured.
 
 
 13
 3. Retention of Jurisdiction v. Exercise of Jurisdiction
 
 
 14
 In its order granting injunctive relief, the district court acknowledged that exhaustion is a matter of comity, not a jurisdictional prerequisite. It said, citing National Farmers, that retention of jurisdiction pending completion of tribal proceedings is consistent with the exhaustion doctrine. The court concluded it could exercise jurisdiction for the purpose of maintaining the status quo and preserving its jurisdiction even though the Railroad had not first exhausted its tribal court remedies. This conclusion confuses the court's discretion to retain jurisdiction pending exhaustion of tribal court remedies (an alternative to dismissal) with the exercise of jurisdiction prior to exhaustion. The court lacks discretion to exercise its jurisdiction until tribal remedies have been exhausted or an exception to the exhaustion requirement makes exhaustion unnecessary.
 
 CONCLUSION:
 
 15
 We hold that under National Farmers, the court erred in exercising its jurisdiction because the Railroad had not exhausted its remedies in the tribal courts or established that any exception to the exhaustion requirement applied. The district court will dissolve the preliminary injunction and either dismiss this action without prejudice or stay it until all tribal court remedies have been exhausted.
 
 
 16
 REVERSED AND REMANDED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 17
 I respectfully dissent.
 
 
 18
 This case resembles Pennzoil, in that the defendant sought federal court protection against a huge defeat in a tribunal other than a federal district court. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). But there is one very big difference. The courts of Texas are bound by the Constitution of the United States. The courts of the Crow tribe are not. "As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations of federal or state authority." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56, 98 S.Ct. 1670, 1675-76, 56 L.Ed.2d 106 (1978).
 
 
 19
 Had Burlington Northern lost its case in a court of a foreign country which did not accord due process, the judgment would not be enforceable in the United States. Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1410 (9th Cir.1995); Hilton v. Guyot, 159 U.S. 113, 205-06, 16 S.Ct. 139, 159-60, 40 L.Ed. 95 (1895). But Indian country is not foreign in this sense, so a judgment debtor in a tribal court cannot raise Bank Melli Iran as a bar to execution. It is hard to say what degree of comity or full faith and credit may be accorded to the tribal court decision, if the tribe seeks to execute on its judgment outside the reservation, see William C. Canby, American Indian Law 155-56 (1981); Felix S. Cohen, Handbook of Federal Indian Law 145 (1942), or what remedy, if any, Burlington Northern and others dependent on its trains may have if the tribe tears up its tracks and sells them for scrap, in the absence of a $250 million cash or equivalent supersedeas bond.[1] The district court made a wise decision to preserve the status quo pending completion of the litigation, and to avoid the risk of destruction of property if the bond could not be posted. We should leave the district court order intact. State of Alaska v. Native Village of Venetie, 856 F.2d 1384 (9th Cir.1988) (preservation of status quo appropriate, and no further exhaustion of remedies needed, though final judgment had not yet come down in tribal court).
 
 
 20
 Serious questions cast a shadow over the tribal court judgment. The two decedents were hit at a well marked crossing, where there had been no accident for fifty years. The train was going 41 miles per hour, well below the speed limit of 60. Both decedents were drunk--the 17-year-old driver of the car had a blood alcohol level of 0.18 percent, her mother, the passenger, who had allowed her daughter to drive, 0.32 percent. The experienced personal injury lawyer who submitted an affidavit in connection with security for the judgment estimated the reasonable expectation for verdicts as $350,000 for the mother, $150,000 for the daughter. This $500,000 evaluation assumes that a reasonable jury could satisfy itself that the railroad did something negligent which caused the deaths, and that comparative negligence was less than 100%.
 
 
 21
 The trial appears to have been in the "wave the bloody shirt"[2] genre. Before voir dire, a judge of the Crow appellate court addressed the entire venire in the Crow language (Burlington Northern had not been given notice that the jurors would be so addressed in the Crow language), reminding them of "bodies scattered along the railway" in the past, and reminding them of their "genealogy":
 
 
 22
 Now Crows, you in this room all of you. This matter you know well; you are not young. This matter we respect. There is prayer involved in this matter. Our way of life, our good way of life. A train runs through the middle of our land. Crows, you know, I don't have to tell you. Bodies, in the past, bodies are scattered along the railway. Now, this is the day. You use your better judgment. I am not telling you what to do. I am not telling you who to follow. I am not telling you who to believe. Use your better judgment. God gave you a mind. God gave you a heart. This day, even this day use it. How am able to help. You should consider if you are a Crow. I don't have to tell you, you must use your mind. Look for a good solution. If this proceeding is successful, you will not be blamed. You are right, you are correct, you are proper. In the past this bench we were ridiculed. The people who presided are called upon. The people who presided are ridiculed, mocked. That's the way you Crows are. Within our reservation there is not many. You Crows established it. Other tribes are under the government, CFR. We are lucky. We have our own court. Consider that, you men and women. If you are kind, if you love, we are interrelated. Use your better judgment. Consider your people. Consider these people, consider those people. Use your better judgment. I want the creator to guide you. We are not kidding. Remember, young men and women. You are selected today because you are honest, because of your genealogy.
 
 
 23
 The reference to "genealogy" was not a mere metaphor. All but one of the seven empaneled jurors were related to the decedents. Acknowledging the "bodies scattered along the railway" theme, the decedents' heirs stated in their opposition to judgment n.o.v. in tribal court that "what the trial was about" was that "there have, in fact, been many Crows killed by the BN and this is no secret." There may be a tribal court jurisdiction issue, regarding this tort case over a non-tribal member defendant operating on an easement to which tribal land is subject.
 
 
 24
 If Burlington Northern posts the $250 million, it subjects the money to the decisions of a tribunal not bound by the Constitution. If it does not, it risks having its tracks across the reservation torn up and sold for scrap to satisfy the judgment. If it posts the money, the tribal court distributes it to the claimants, and the district court subsequently orders return of the money, enforcement of the district court's order might be problematic.
 
 
 25
 A party must exhaust its tribal remedies before seeking relief in federal district court. National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). Burlington Northern has done that. It applied to the tribal court for relief from the requirement that it post a $250 million supersedeas bond. The tribal court denied relief. Burlington Northern then appealed to the tribal court of appeals. That court had not ruled when the ten day automatic stay expired. At that time, there was nothing Burlington Northern could do, no relief which could be sought, in tribal court prior to levy of execution. Exhaustion was therefore complete at that time.
 
 
 26
 In order to avoid levy of execution before the tribal court of Appeals ruled, Burlington Northern petitioned the district court for a temporary restraining order. After the ten day automatic stay had expired, the tribal court did rule, but that ruling also gave Burlington Northern no practical relief. The tribal court of appeals ruled that in order to obtain a stay of execution, Burlington Northern had to post an acceptable surety bond, cash, letter of credit, government securities, pledges of specific physical assets and guarantee of payment and protection against transfers of assets. There is no reason why Burlington Northern should be required to wait and see what the trial court does before exhaustion is treated as complete. The tribal appellate mandate bound the trial court. The time for avoiding execution automatically had expired, and the requirements for what would have to be posted were set. All that remained was for Burlington Northern to turn over $250 million in one form or another, and ask the trial court whether the form was adequate.
 
 
 27
 A party need not exhaust tribal court remedies if exhaustion would be futile. "We do not suggest that exhaustion would be required where ... exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 856 n. 21, 105 S.Ct. 2447, 2454 n. 21, 85 L.Ed.2d 818 (1985). If exhaustion in a technical sense would require a final order from the trial court subsequent to the appellate tribal court's mandate, then requirement of this order would be futile. As explained above, the trial court could not grant Burlington Northern relief, and as a practical matter, Burlington Northern might well be unable to challenge tribal court jurisdiction effectively if the tribal appellate court supersedeas decision could not immediately be challenged.
 
 
 28
 Our reversal fails to apply the deferential standard of review required for preliminary injunctions. The district court did not have to decide, and did not decide, whether Burlington Northern was right in its challenge to the tribal court decision, or that the tribal court lacked jurisdiction. It needed only to balance the probability of success on the merits against the other relevant considerations. See American Motorcyclist Ass'n v. Watt, 714 F.2d 962, 965 (9th Cir.1983). The district court recognized that exhaustion was required for a challenge in federal court to a tribal court decision, but concluded that as to supersedeas, it had been accomplished. Regardless of whether the district court was correct, a difference of opinion with respect to application of a correctly recognized legal principle can be reversed only for abuse of discretion, and is not subject to de novo review. Gregorio T. v. Wilson, 59 F.3d 1002, 1004 (9th Cir.1995); Sports Form, Inc. v. United Press Int'l, 686 F.2d 750, 752 (9th Cir.1982).
 
 
 29
 Because the majority erroneously reviews de novo rather than for abuse of discretion, its opinion does not speak to whether the district court abused its discretion. For the reasons stated above, the probability of success on the merits was adequate to enable the district court to weigh irreparable harm. See Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 545, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542 (1987).
 
 
 30
 There is also a very great public interest, weighed by the district court, because tearing up Burlington Northern's tracks through the reservation would interfere with interstate commerce outside the reservation. Several affidavits were submitted by officers of electrical utilities in the Midwest, which depend on a reliable supply of coal carried by Burlington Northern trains. The railroad runs 20 to 25 trains per day across the Crow reservation, 16 of which are coal trains bound for utilities in Minnesota and Wisconsin.
 
 
 
 *
 Judge Schroeder has voted to reject the suggestion for a rehearing en banc. Judge Kleinfeld has voted to grant the petition for rehearing and accept the suggestion for rehearing en banc
 
 
 [1]
 Rule 18(b) provides that when a final order or judgment is appealed, the tribal court may grant a stay of execution or judgment upon appellant's motion, provided that appellant, on or before the date of filing the appeal, posts a surety bond sufficient to guarantee performance of the judgment and payment of the costs of appeal
 
 
 [2]
 This due process review would be unavailable if appellants later prevail on their argument that Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), precludes private enforcement of the Indian Civil Rights Act, 25 U.S.C. § 1302(8), in federal court
 
 
 [1]
 The parties have recently filed a paper entitled "notice," advising us that the judgment "has been reduced by Appellants" to $25 million, "that is, FIVE MILLION DOLLARS ($5,000,000.00) for each claimant." The claimants say that they "agree and stipulate" that "any appeal bond ... need only be in the amount of $25,000,000.00 plus interest," with payment to be conditioned on "whatever federal review is appropriate under the circumstances." It is hard to know what to make of this change, or how it affects this case if at all, because there is no court order, stipulation by Burlington Northern, or supplementation of the record regarding any subsequent course of proceedings
 
 
 [2]
 "A symbol used to inflame to anger or to retaliative action--used specifically in the U.S. after the Civil War of any means employed to stir up or revive party or sectional animosity, especially in the phrase 'wave the bloody shirt.' " Webster's Third New International Dictionary 238 (1981)