136 F.3d 610
 67 USLW 3479, 28 Envtl. L. Rep. 20,550,
98 Cal. Daily Op. Serv. 1040,
98 Daily Journal D.A.R. 1475
 EL PASO NATURAL GAS COMPANY, a Delaware Corporation,
Plaintiff-Appellant,
v.
Laura NEZTSOSIE; Arlinda Neztsosie, Defendants-Appellees.
CYPRUS FOOTE MINERAL COMPANY, a Pennsylvania Corporation;
Cyprus Amax Mineral Company, a Delaware
Corporation, Plaintiffs-Appellants,
v.
Zonnie Marie Dandy RICHARDS, individually and as
representative of the Estate of Harold J.
Richards, Sr., Defendant-Appellee.
 Nos. 96-17121, 96-17139.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 5, 1997.
Decided Feb. 11, 1998.
As Amended on Denial of Rehearing and Rehearing En Banc
April 27, 1997.*
 
 Tom Galbraith, Lewis and Roca, LLP, O'Connor, Cavanagh, Anderson, Westover, Killingsworh & Beshears, and Bryan Cave, Phoenix, AZ, for plaintiffs-appellants.
 Seth Richard Lesser, Bernstein Litowitz, Berger & Grossmann, LLP, New York City, Cherie V. Daut, Shiprock, New Mexico and Melat, Pressman, Ezell & Higbie, Colorado Springs, CO, for defendants-appellees.
 Appeals from the United States District Court for the District of Arizona; Robert G. Strand, District Judge, Presiding. D.C. Nos. CV-96-00049-RGS, CV-96-01524-RGS.
 Before: PREGERSON, FERGUSON, and KLEINFELD, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Members of the Navajo Nation (the "Navajo Court Plaintiffs") filed two separate actions in Navajo Tribal Court against corporations that conducted uranium mining operations on the Navajo Nation Reservation. The Navajo Court Plaintiffs alleged personal injury and wrongful death claims based on Navajo common law. In response to those actions, El Paso Natural Gas Company ("El Paso") and Cyprus Foote Mineral Company and Cyprus Amax Minerals Company (collectively "Cyprus") filed two separate suits in federal district court seeking preliminary injunctions to enjoin the Navajo Tribal Court from asserting jurisdiction over the Navajo Court Plaintiffs' claims. El Paso and Cyprus (collectively the "mining companies") alleged that all actions arising from "nuclear incidents" fall within the Price-Anderson Act, 42 U.S.C. § 2011 et seq., and must be litigated in federal court.
 
 
 2
 The district court granted in part, and denied in part, the mining companies' requests for preliminary injunctions. The district court granted the preliminary injunctions to the extent the Navajo Court Plaintiffs alleged claims under Price-Anderson. The district court denied the preliminary injunctions, however, to the extent the Navajo Court Plaintiffs did not allege Price-Anderson claims. We have jurisdiction under 28 U.S.C. § 1292(a)(1). We affirm in part and reverse in part.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 The two actions filed by the Navajo Court Plaintiffs have been consolidated for this appeal. The facts and prior proceedings in each of these actions are as follows:
 
 1. Neztsosie v. El Paso
 
 4
 Between 1956 and 1959, Rare Metals Corporation of America ("Rare Metals"), a now defunct subsidiary of El Paso, conducted uranium mining operations on the Navajo Nation Reservation. On March 29, 1995, Laura and Arlinda Neztsosie (the "Neztsosies"), members of the Navajo Nation, filed suit against Rare Metals in Navajo Tribal Court. The Neztsosies asserted claims for personal injuries arising from Rare Metals' uranium mining activities.
 
 
 5
 On January 5, 1996, El Paso filed suit against the Neztsosies in the United States District Court for the District of Arizona. El Paso sought a preliminary injunction enjoining the Neztsosies from prosecuting their claims in the Navajo Tribal Court. El Paso also sought a declaration that the Navajo Tribal Court had no jurisdiction over the Neztsosies's claims. El Paso asserted that the Neztsosies had to litigate their claims in federal court because their claims alleged liability arising from a "nuclear incident" under the Price-Anderson Act, 42 U.S.C. §§ 2014, 2210.
 
 
 6
 After a hearing, District Court Judge Robert G. Strand, entered an order denying in part, and granting in part, El Paso's request for a preliminary injunction. The district court denied El Paso's request for a preliminary injunction "to the extent that it in any way seeks to have this Court rule on any aspect of jurisdiction of the Navajo tribal court ... except to the extent that [the Neztsosies] seek relief based upon the Price-Anderson Act in tribal court." In reaching its decision, the district court relied on "principles of tribal sovereignty" and the "tribal exhaustion doctrine." The district court stated, however, that it did not determine whether Price-Anderson had any application to the claims asserted by the Neztsosies in Tribal Court.
 
 2. Richards v. Cyprus
 
 7
 Cyprus Foote Mineral Company is the successor by merger to Vanadium Corporation of America ("VCA"). From the 1940's through the 1960's, VCA operated a uranium mine in Cane Valley, Arizona, known as Monument No. 2 mine. During the 1960's, VCA also constructed and operated a uranium concentrator at the Monument No. 2 mine site. The remnants of the ore concentrating process consisted of uranium tailings. The tailings produced by the concentrator were stored on a tailings pile on land adjacent to the Monument No. 2 mine site.
 
 
 8
 On April 20, 1995, Zonnie Marie Dandy Richards, a member of the Navajo Nation, filed suit individually, and as representative of her deceased husband's estate, against VCA and others in Navajo Tribal Court. Richards asserted claims for wrongful death and personal injuries arising from VCA's activities at the Monument No. 2 mine site.
 
 
 9
 On June 26, 1996, Cyprus filed suit against Richards in the United States District Court for the District of Arizona. Like El Paso, Cyprus sought a preliminary injunction enjoining Richards from prosecuting her claims in Navajo Tribal Court. Cyprus also sought a declaration that the Navajo Tribal Court had no jurisdiction over Richards's claims. Cyprus alleged that Richards had to litigate her claims in federal court because she alleged liability arising from a "nuclear incident" under Price-Anderson.
 
 
 10
 The Richards action, like the Neztsosie action, was assigned to District Court Judge Strand. The district court entered an order substantially similar to the order issued in the Neztsosie matter. The district court denied in part, and granted in part, Cyprus's request for a preliminary injunction.
 
 
 11
 El Paso and Cyprus timely appeal the district court's orders.
 
 STANDARD OF REVIEW
 
 12
 We review de novo whether the district court was required to abstain from granting or denying an injunction when a party has failed to exhaust tribal court remedies. Burlington N. R.R. v. Red Wolf, 106 F.3d 868, 869-70 (9th Cir.1997) (en banc).
 
 I. The Tribal Exhaustion Requirement
 
 13
 The Supreme Court has stated that, subject to certain exceptions, comity principles require federal courts to either dismiss or abstain from deciding cases in which a party asserts that concurrent jurisdiction exists in an Indian tribal court. Crawford v. Genuine Parts Co., 947 F.2d 1405, 1407 (9th Cir.1991) (citing National Farmers Un. Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) and Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987)). "Considerations of comity require the exhaustion of tribal remedies before the [tribal court's jurisdiction] may be addressed by the district court." Wellman v. Chevron USA, Inc., 815 F.2d 577, 578 (9th Cir.1987). "The requirement of exhaustion of tribal remedies is not discretionary; it is mandatory." Burlington N. R.R. v. Crow Tribal Council ("Crow Tribal Council "), 940 F.2d 1239, 1245 (9th Cir.1991). "Until petitioners have exhausted the remedies available to them in the Tribal Court system, it would be premature for a federal court to consider any relief." National Farmers, 471 U.S. at 857, 105 S.Ct. at 2454 (footnote omitted); see also Yellowstone County v. Pease, 96 F.3d 1169, 1171 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1691, 137 L.Ed.2d 818 (1997) ("[A] party must exhaust tribal court remedies before a federal district court may entertain a challenge to tribal jurisdiction.") (emphasis added); Crow Tribal Council, 940 F.2d at 1244 ("[F]ederal courts should not even make a ruling on tribal court jurisdiction until tribal remedies are exhausted.") (citation omitted).
 
 
 14
 "[T]he initial determination of whether the Tribe has jurisdiction lies with the tribal court alone." Crow Tribal Council, 940 F.2d at 1244. "[N]on-Indian defendants must exhaust tribal court remedies before seeking relief in federal court, even where defendants allege that proceedings in tribal court exceed tribal sovereign jurisdiction." Id.
 
 
 15
 The tribal exhaustion requirement is based on considerations of comity and the long-standing policy of promoting tribal self-government and self-determination. National Farmers, 471 U.S. at 856, 105 S.Ct. at 2453-54. "[T]he federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction.' " Iowa Mut., 480 U.S. at 16, 107 S.Ct. at 976 (quoting National Farmers, 471 U.S. at 857, 105 S.Ct. at 2454).
 
 
 16
 The existence and extent of a tribal court's jurisdiction require a careful examination of tribal sovereignty. "[T]hat examination should be conducted in the first instance in the Tribal Court itself." National Farmers, 471 U.S. at 856, 105 S.Ct. at 2454. "[P]roper respect for tribal legal institutions requires that they be given a 'full opportunity' to consider the issues before them and 'to rectify errors.' " Iowa Mut., 480 U.S. at 16, 107 S.Ct. at 976-77 (citing National Farmers, 471 U.S. at 857, 105 S.Ct. at 2454).
 
 
 17
 While tribal exhaustion promotes tribal self-government and self-determination, it also promotes judicial efficiency:
 
 
 18
 [T]he orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed.... Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.
 
 
 19
 National Farmers, 471 U.S. at 856-57, 105 S.Ct. at 2454. "Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge." Id. at 856, 105 S.Ct. at 2454.
 
 
 20
 In this case, the mining companies have not exhausted their tribal court remedies. Instead, the mining companies chose to file actions in federal district court seeking to enjoin the Navajo Tribal Court from asserting jurisdiction over the Navajo Court Plaintiffs' claims. See Iowa Mut., 480 U.S. at 17, 107 S.Ct. at 977 ("At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts."). Thus, unless an exception to the tribal exhaustion requirement applies, the district court was obligated to abstain from ruling on the tribal court's jurisdiction over the Navajo Court Plaintiffs' common law claims.
 
 
 21
 An exception to the tribal exhaustion requirement exists where: (1) an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) tribal court jurisdiction patently would violate express jurisdictional prohibitions; (3) exhaustion would be futile because of the lack of an adequate opportunity to challenge the tribal court's jurisdiction; or (4) no federal grant authorizes tribal governance of nonmembers' conduct on land covered by Montana's main rule. See Strate v. A-1 Contractors, --- U.S. ----, ---- n. 14, 117 S.Ct. 1404, 1416 n. 14 (1997); National Farmers, 471 U.S. at 857 n. 21, 105 S.Ct. at 2454 n. 21. In this case, the parties only dispute the applicability of the "express jurisdictional prohibition" exception to tribal court jurisdiction. "A substantial showing must be made by the party seeking to invoke [the 'express jurisdictional prohibition'] exception to the tribal exhaustion rule." Kerr-McGee Corp. v. Farley ("Farley "), 115 F.3d 1498, 1502 (10th Cir.1997). "[T]ribal courts rarely lose the first opportunity to determine jurisdiction because of an 'express jurisdictional prohibition.' " Id.
 
 II. The District Court's Orders
 
 22
 In this case, the district court's orders appear to hold that Price-Anderson constitutes an express prohibition of tribal court jurisdiction. The district court denied the mining companies' requests for preliminary injunctions "except to the extent that [the Navajo Court Plaintiffs] seek relief based upon the Price-Anderson Act in tribal court." The district court also stated that it did not determine whether Price-Anderson had any application to the claims asserted by the Navajo Court Plaintiffs.
 
 
 23
 The mining companies have appealed that portion of the district court's orders that allow the Navajo Court Plaintiffs to pursue claims in Navajo Tribal Court other than Price-Anderson claims. The mining companies assert that the Navajo Court Plaintiffs are barred from pursuing any claims in Navajo Tribal Court because the Navajo Court Plaintiffs' claims arise from a nuclear tort and fall within the ambit of Price-Anderson.
 
 
 24
 The Navajo Court Plaintiffs, on the other hand, have not appealed the district court's rulings that Price-Anderson constitutes an express prohibition of tribal court jurisdiction. Rather, the Navajo Court Plaintiffs seek to affirm that portion of the district court's orders that allow them to pursue claims other than Price-Anderson claims in Navajo Tribal Court. The Navajo Court Plaintiffs contend that their claims are based on Navajo common law and do not implicate Price-Anderson.
 
 
 25
 It is unclear why the Navajo Court Plaintiffs have not appealed the district court's rulings that Price-Anderson constitutes an express jurisdictional prohibition that prevents the Navajo Tribal Court from determining its jurisdiction over such claims. Nevertheless, because of the important comity considerations involved, we sua sponte examine whether Price-Anderson constitutes an express prohibition of tribal court jurisdiction. See Stone v. City and County of San Francisco, 968 F.2d 850, 855 (9th Cir.1992) ("Issues touching on federalism and comity may be considered sua sponte.").[1]
 
 
 26
 As the following discussion demonstrates, we conclude that Price-Anderson does not contain an express jurisdictional prohibition barring the Navajo Tribal Court from determining its jurisdiction over the Navajo Court Plaintiffs' claims. Therefore the mining companies, before proceeding in federal court, are obligated to first exhaust their tribal court remedies.
 
 III. Price-Anderson
 
 27
 The mining companies assert that Price-Anderson and its legislative history mandate exclusive federal court jurisdiction for claims arising from "nuclear incidents." The mining companies also assert that we may infer an express jurisdictional prohibition. These contentions are not persuasive.
 
 
 28
 Before 1954, a federal monopoly existed over the use, control, and ownership of nuclear technology. Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 206, 103 S.Ct. 1713, 1723, 75 L.Ed.2d 752 (1983). In 1954, however, Congress passed the Atomic Energy Act to encourage the private sector to become involved in the development of atomic energy under federal regulation. Id. at 206-07, 103 S.Ct. at 1723-24.
 
 
 29
 In 1957, Congress enacted Price-Anderson. Price-Anderson amended the Atomic Energy Act by creating specific protections for the nuclear industry from tort liability. See Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 251, 104 S.Ct. 615, 622-23, 78 L.Ed.2d 443 (1984). Price-Anderson contains three distinct elements. First, it sets a ceiling on the aggregate damage award for nuclear tort claims that can be imposed against an entity involved in the use or handling of radioactive material. In re TMI Litig. Cases Consol. II, 940 F.2d 832, 852 (3d Cir.1991). Second, it indemnifies any entity exposed to potential liability for activity resulting in a nuclear incident, even if the entity did not directly participate in the activity. Id. Third, Price-Anderson established an indemnification program through which the federal government would require entities involved in nuclear activities to obtain private insurance to a certain level, and then the federal government would pay all public liability claims above that liability ceiling. Farley, 115 F.3d at 1503.
 
 
 30
 Until amended in 1988, Price-Anderson's provisions regarding nuclear tort litigation did not apply unless and until the Nuclear Regulatory Commission ("NRC") determined that an "extraordinary nuclear occurrence" had transpired. O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1095-96 (7th Cir.1994). The 1988 amendments to Price-Anderson expanded its reach to include all "public liability actions" and eliminated the requirement that the NRC designate an extraordinary nuclear occurrence. 42 U.S.C. § 2210(n)(2). See also S.Rep. No. 218, 100th Cong., 1st Sess. 2, at 13 (1987) ("Any suit asserting public liability shall be deemed to be an action arising under the Price-Anderson Act."); H.R.Rep. No. 104, 100th Cong., 1st Sess., pt. 1 (same).
 
 Price-Anderson states:
 
 31
 With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place ... shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant ... any such action pending in any State court ... or United States district court shall be removed or transferred to the United States district court having venue under this subsection.
 
 
 32
 42 U.S.C. § 2210(n)(2). Price-Anderson defines "public liability action" as "any suit asserting public liability." Id. § 2014(hh). "[P]ublic liability means any legal liability arising out of or resulting from a nuclear incident." Id. § 2014(w). A "nuclear incident means any occurrence ... within the United States causing ... bodily injury, sickness, disease, or death ... arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source,[2] special nuclear, or byproduct material."[3] Id. § 2014(q).
 
 
 33
 "Although the public liability cause of action is built around preexisting state law, it contains some distinctively federal elements as well." O'Conner, 13 F.3d at 1096; see also 42 U.S.C. § 2014(hh) ("[T]he substantive rules for decision in [a public liability] action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [42 U.S.C. § 2210]."). For example, Price-Anderson as amended in 1988 provides the limitations period for public liability actions, 42 U.S.C. § 2210(n)(1), provides for venue, id. § 2210(n)(2), limits the availability of punitive damages in an action arising out of an extraordinary nuclear occurrence, id. § 2210(s), and mandates the waiver of normally-available defenses in the case of extraordinary nuclear occurrences. Id. § 2210(n)(1).
 
 
 34
 IV. Price-Anderson does not Constitute an Express
 
 Jurisdictional Prohibition
 
 35
 One exception to the tribal exhaustion requirement calls for an express jurisdictional prohibition. See National Farmers, 471 U.S. at 857 n. 21, 105 S.Ct. at 2454 n. 21. This exception rarely applies. See Farley, 115 F.3d at 1502 (noting that a tribal court "rarely" loses the opportunity to determine its jurisdiction because of an express jurisdictional prohibition). "[C]ivil jurisdiction over the activities of non-Indians on reservation lands 'presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute.' " Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1228 (9th Cir.1989) (emphasis added) (quoting Iowa Mut., 480 U.S. at 18, 107 S.Ct. at 978).
 
 
 36
 Price-Anderson contains no such express prohibition of tribal court jurisdiction. Price-Anderson provides for concurrent rather than exclusive jurisdiction over claims arising from nuclear incidents. It merely grants defendants the right, rather than the obligation, to remove such cases to federal court. See 42 U.S.C. § 2210(n)(2) ("Upon motion of the defendant ... any such action pending in any State court ... shall be removed or transferred to the United States district court having venue under this subsection.").[4]
 
 
 37
 In Farley, the Tenth Circuit held that Price-Anderson does not constitute an express jurisdictional prohibition. In that case, certain members of the Navajo Nation filed an action in the Navajo Tribal Court against two mining companies. The mining companies had conducted operations on the Navajo Nation Reservation between 1952 and 1973. Farley, 115 F.3d at 1500. The plaintiffs alleged that the mining companies' mill released vast quantities of radioactive and toxic materials, which caused injuries. Id. The mining companies, without answering the tribal court complaint, filed an action in federal district court seeking to enjoin the suit from proceeding in the tribal court. Id. The mining companies asserted that Price-Anderson constitutes an express jurisdictional prohibition of tribal court suits involving nuclear torts. Thus, they argued that they had no obligation to exhaust tribal court remedies. Id.
 
 
 38
 The district court disagreed and stated that the "Price-Anderson Act and its amendments are devoid of any mention of 'Indians,' 'tribes,' or 'tribal-court jurisdiction.' " Kerr-McGee Corp. v. Farley, 915 F.Supp. 273, 277 (D.N.M.1995), aff'd, 115 F.3d 1498 (10th Cir.1997). The district court further noted:
 
 
 39
 The Price-Anderson Act does not affirmatively limit tribal court jurisdiction. Although Congress has plenary power to define the jurisdiction of tribal courts, it did not exercise that power, when it drafted the Price-Anderson Act. The Act makes no reference to Indians and nothing in the legislative history suggests any intent to render inoperative the established policy promoting tribal self-government.
 
 
 40
 Id. at 280 (citation omitted).
 
 
 41
 The Tenth Circuit affirmed the district court's decision to stay all proceedings before it until the mining companies exhausted their tribal court remedies. The Tenth Circuit noted: "[T]he 1988 amendments [to Price-Anderson] do not explicitly create exclusive federal court jurisdiction over nuclear incident litigation." Farley, 115 F.3d at 1504.[5]
 
 
 42
 The mining companies contend that cases interpreting the 1988 Price-Anderson amendments recognize the Act's exclusivity. See Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir.1997) ("[A plaintiff] can sue under the Price-Anderson Act, as amended, or not at all."); In re TMI Litig., 940 F.2d at 854 ("A claim growing out of any nuclear incident is compensable under the terms of the [1988 Amendments to the Act] or it is not compensable at all."); O'Conner, 13 F.3d at 1099 ("[T]he broad definition of 'public liability action' embodied in the Price-Anderson Act implies that Congress has exercised power under Article I and has enacted a new and independent, indeed exclusive, cause of action."). These cases are inapplicable, however, because they only address federal-state jurisdictional issues relating to Price-Anderson. They do not address Indian tribes or tribal sovereignty.
 
 
 43
 "Indian tribes occupy a unique status under our law." National Farmers, 471 U.S. at 851, 105 S.Ct. at 2451. "The condition of the Indians in relation to the United States is perhaps unlike that of any other two people in existence.... The relation of the Indians to the United States is marked by peculiar and cardinal distinctions which exist nowhere else." Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 15-16, 8 L.Ed. 25 (1831).
 
 
 44
 Comity concerns differ between federal-state and federal-tribal jurisdiction:
 
 
 45
 As in cases raising comity concerns regarding federal-state jurisdiction, comity concerns in federal-tribal jurisdiction arise out of mutual respect between sovereigns. In the realm of federal-tribal jurisdiction, however, Congress has expressed an additional interest in promoting the development of tribal sovereignty. The Supreme Court has recognized this congressional intent and assiduously advocated federal abstention in favor of tribal courts.
 
 
 46
 Smith v. Moffett, 947 F.2d 442, 445 (10th Cir.1991). Thus, even if Price-Anderson preempts state court jurisdiction-still an open question in this circuit-there is no express prohibition of tribal court jurisdiction.
 
 
 47
 The Supreme Court has also recognized that comity concerns differ between federal-state and federal-tribal jurisdiction. In Iowa Mut. Ins. Co. v. LaPlante, the Supreme Court refused to infer that the diversity statute, 28 U.S.C. § 1332, divested tribal courts of jurisdiction in diversity actions. Iowa Mut., 480 U.S. at 17-18, 107 S.Ct. at 977-78. The Supreme Court stated that § 1332 "makes no reference to Indians and nothing in the legislative history suggests any intent to render inoperative the established federal policy promoting tribal self-government." Id. at 17, 107 S.Ct. at 977.
 
 
 48
 The Supreme Court noted: " 'Because the Tribe retains all inherent attributes of sovereignty that have not been divested by the Federal Government, the proper inference from silence ... is that the sovereign power ... remains intact.' " Id. at 18, 107 S.Ct. at 977-78 (quoting Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 149 n. 14, 102 S.Ct. 894, 908 n. 14, 71 L.Ed.2d 21 (1982)). Thus, the Court held that "[i]n the absence of any indication that Congress intended [§ 1332] to limit the jurisdiction of the tribal courts, we decline ... to hold that tribal sovereignty can be impaired in this fashion." Id.
 
 
 49
 We have also refused to infer a prohibition of tribal court jurisdiction absent express language in addressing 28 U.S.C. § 1355. United States v. Plainbull, 957 F.2d 724 (9th Cir.1992). Section 1355 states: "The district courts shall have original jurisdiction, exclusive of the courts of the States " over certain actions brought by the federal government. 28 U.S.C. § 1335 (emphasis added). We noted that the plain language of § 1355 "only grants the district court original jurisdiction 'exclusive of the courts of the States,' not exclusive of all other courts that would otherwise have had jurisdiction. Since a tribal court is not a state court, we hold that it does not fall within the exclusive jurisdiction provision of section 1355." Id.
 
 
 50
 The mining companies rely on Lower Brule Constr. Co. v. Sheesley's Plumbing & Heating Co., 84 B.R. 638 (D.S.D.1988) in asserting that tribal jurisdiction can be limited absent an express jurisdictional prohibition. This claim is also without merit. In Brule, the Tribal Housing Authority asserted that the tribal court had jurisdiction over a bankruptcy action. Id. at 640. The district court disagreed, however, and concluded that the tribal court's civil jurisdiction was "unlimited only in relation to matters of Indian self-government." Id. at 641. The district court reasoned that requiring tribal courts to perform as bankruptcy courts "would not promote self-government among the Indian tribes, even assuming that a body of 'bankruptcy' law existed in tribal court." Id. The court further noted: "The Bankruptcy Code makes no reference to Indians or tribal courts and there is no Congressional grant of authority for Indian tribal courts to assume jurisdiction over bankruptcy proceedings." Id. at 642.
 
 
 51
 Brule is of limited guidance in this case. First, we have already determined that an express jurisdictional prohibition is required to limit tribal court jurisdiction. See Plainbull, 957 F.2d at 726; see also Farley, 115 F.3d at 1505 ("Simply put, 'exclusive jurisdiction' is not conferred unless conferred explicitly."). Second, the tribe in Brule did not allege that it had a body of bankruptcy law which it could apply. In this case, however, the Navajo Court Plaintiffs have apparently asserted claims based on Navajo common law-an area clearly within the Navajo Tribal Court's expertise.[6]
 
 
 52
 Even if the issue were ambiguous, federal courts are "required to construe ambiguity in statutes on Indian affairs in favor of preserving Indian sovereignty." Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 889 (2d Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 610, 136 L.Ed.2d 535 (1996). In this case, members of the Navajo Nation have alleged claims for personal injury and wrongful death arising from activity occurring on the Navajo Nation Reservation. Allowing the Navajo Tribal Court to determine its jurisdiction over these claims will preserve Indian sovereignty.
 
 CONCLUSION
 
 53
 For the reasons stated above, we hold that Price-Anderson does not constitute an express jurisdictional prohibition that prevents the Navajo Tribal Court from determining its jurisdiction over the Navajo Court Plaintiffs' claims for personal injury and wrongful death arising from activities occurring on the Navajo Nation Reservation.[7] Accordingly, we reverse that portion of the district court's orders granting the mining companies' requests for preliminary injunctions. We affirm that portion of the district court's orders denying the mining companies' requests for preliminary injunctions.
 
 
 54
 Because the Navajo Tribal Court is to determine in the first instance whether it has jurisdiction over the Navajo Court Plaintiffs' claims, we remand this matter to the district court to either enter a stay of all proceedings or dismiss the complaint without prejudice pending the exhaustion of tribal court remedies. See Iowa Mut., 480 U.S. at 20 n. 14, 107 S.Ct. at 978 n. 14.
 
 
 55
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 56
 I respectfully dissent.
 
 
 57
 In these two lawsuits, three Navajo Indians sued El Paso Natural Gas Company, a Delaware corporation, and Cyprus Foote Mineral Company, a Pennsylvania corporation, in Navajo tribal court. The Richards case alleged death from cancer caused by radiation. The Neztsosies' case alleged that the Neztsosies and their cattle were poisoned by drinking water contaminated with radiation and heavy metals. The uranium mining occurred many years ago. In ruling on a motion for preliminary injunction, the district court ruled that tribal court proceedings were enjoined as to Price-Anderson claims, but not as to other claims, and did not rule on whether the Price-Anderson Act applied to claims asserted by plaintiffs in tribal court. Plaintiffs did not appeal the injunction against litigating Price-Anderson claims in tribal court, so it should be treated as law of the case. The corporations appealed denial of the preliminary injunction as to all claims not covered by Price-Anderson. The majority opinion lets the plaintiffs sue the corporations in tribal court on all their claims, Price-Anderson or not. That is incorrect.
 
 
 58
 The Price-Anderson Act, as originally enacted in 1957, did not create a federal tort cause of action, nor confer jurisdiction on the federal courts. Kiick v. Metropolitan Edison Co., 784 F.2d 490, 493 (3d Cir.1986); Stibitz v. General Pub. Util. Corp., 746 F.2d 993, 997 (3d Cir.1984). Congress amended the Act to expand federal jurisdiction to include claims arising from any "nuclear incident." See O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1096 (7th Cir.1994).
 
 
 59
 The statute provides that federal district courts have original jurisdiction with respect to "any public liability action arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n)(2). Cases brought in state courts "shall be removed" to federal court. Id. "Public liability" in this statute means "any legal liability arising out of or resulting from a nuclear incident." 42 U.S.C. § 2014(w). A "nuclear incident" was defined as any occurrence arising out of the hazardous properties of nuclear materials that causes sickness, personal injury or death:
 
 
 60
 any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.
 
 
 61
 42 U.S.C. § 2014(q). I do not think there are any actions that can arise out of sickness or death resulting from the hazardous properties of nuclear material that are not Price-Anderson actions. That should be the end of the case, because the plaintiffs did not appeal the determination by the district court that Price-Anderson actions could not be asserted in tribal court.
 
 
 62
 Plaintiffs' claims for injury and death resulting from nuclear materials left over from uranium mining were Price-Anderson claims or nothing, and Price-Anderson claims must be brought in federal district court. Congress did not leave room for non-federal tribunals to interfere with nuclear development that Congress favored, or foster nuclear development it disfavored. Two circuits have held that the federal cause of action is exclusive. The Third Circuit stated:
 
 
 63
 Congress clearly intended to supplant all possible state causes of action when the factual prerequisite of the statute are met.... Congress clearly considered the decisions of our court holding that Congress had not intended to create a federal cause of action for cases not based upon an extraordinary nuclear occurrence.... Congress then provided, in the [1988] Amendments Act, the clearest expression of intent that there be a federal cause of action arising directly under the Act.
 
 
 64
 In re TMI Litigation Cases Consolidated, 940 F.2d 832, 857 (3d Cir.1991). The court concluded, "After the Amendments Act, no state cause of action based on public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or it is not compensable at all. " Id. at 854 (emphasis in original). In O'Conner v. Commonwealth Edison Co., 13 F.3d 1090 (7th Cir.1994), the Seventh Circuit similarly held: "A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or it is not compensable at all." O'Conner, 13 F.3d at 1099.
 
 
 65
 The majority should not have reached over the head of the parties to reverse on a matter not even raised, whether prosecution of Price-Anderson claims in tribal court should have been enjoined.
 
 
 66
 Because (1) it is law of the case, not appealed, that the tribal court lacks jurisdiction over Price-Anderson claims, and (2) there are no claims that can be made that are not Price-Anderson claims, it necessarily follows that (3) there are no claims that can be made in tribal court. There can be no claim for which exhaustion in tribal court can be required.
 
 
 67
 We made a somewhat similar exhaustion doctrine mistake in Burlington Northern Railroad Co. v. Red Wolf, 106 F.3d 868 (9th Cir.), vacated --- U.S. ----, 118 S.Ct. 37, 139 L.Ed.2d 5 (1997). The Supreme Court made short work of our error, vacating it in a memorandum decision for further consideration in light of Strate v. A-1 Contractors, --- U.S. ----, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). The Court held in Strate, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), that exhaustion in tribal court is not required, where "it is plain that no federal grant of authority provides for tribal governance of nonmembers' conduct":
 
 
 68
 When, as in this case, it is plain that no federal grant provides for tribal governance of nonmembers' conduct ... covered by [Montana v. United States,' 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) ] main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from such conduct. As in criminal proceedings, state or federal courts will be the only forums competent to adjudicate those claims. Therefore, when tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise applicable exhaustion requirement, must give way, for it would serve no purpose other than delay.
 
 
 69
 Id. at ---- n. 14, 117 S.Ct. at 1416 n. 14. The majority has in footnote 5 attempted to limit Strate to its facts, as we might with a poorly reasoned decision of our own that had not stood up well over time. We cannot do that with a Supreme Court decision.
 
 
 
 *
 Judges Pregerson and Ferguson voted to deny the petition for rehearing, Judge Pregerson voted to reject the suggestion for rehearing en banc and Judge Ferguson so recommends. Judge Kleinfeld voted to grant the petition for rehearing and to accept the suggestion for rehearing en banc
 
 
 [1]
 Our decision to review this issue sua sponte is further supported by: (1) the Tenth Circuit's recent decision in Farley, 115 F.3d at 1505, which expressly rejected the claim that Price-Anderson constitutes an express jurisdictional prohibition; and (2) the district court's misplaced reliance on UNC Resources, Inc. v. Benally, 518 F.Supp. 1046 (D.Ariz.1981), in considering the tribal exhaustion doctrine
 In Benally, a corporation operating a uranium mill near the Navajo reservation brought an action in federal district court to enjoin several members of the Navajo Nation from proceeding in Navajo Tribal Court on civil actions alleging personal injuries and property damage arising from the corporation's activities. Id. at 1048. The district court concluded that the tribal court had no jurisdiction. Benally is not dispositive, however, because it was decided before the Supreme Court announced the tribal exhaustion doctrine in National Farmers. Moreover, the conduct at issue in Benally took place off the reservation, whereas in this case the alleged conduct took place on the Navajo Nation Reservation. Tribal jurisdiction applies more clearly to conduct occurring on reservation lands. See Iowa Mut., 480 U.S. at 18, 107 S.Ct. at 977-78 ("Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty.") (emphasis added); Crawford, 947 F.2d at 1408 ("When the dispute is a 'reservation affair' ... there is no discretion not to defer.").
 
 
 [2]
 "[S]ource material means (1) uranium, thorium, ... or (2) ores containing one or more of the foregoing materials." 42 U.S.C. § 2014(z)
 
 
 [3]
 "[B]yproduct material" includes "the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content." 42 U.S.C. § 2014(e)
 
 
 [4]
 The mining companies' reliance on United States v. White Mountain Apache Tribe, 784 F.2d 917 (9th Cir.1986) and United States v. Yakima Tribal Court, 806 F.2d 853 (9th Cir.1986) is misplaced. In White Mountain, we stated: "There is no point in requiring exhaustion ... because tribal court jurisdiction is clearly foreclosed by the sovereign immunity of the United States." White Mountain, 784 F.2d at 920 n. 10; see also Yakima, 806 F.2d at 861 (following White Mountain ). Unlike White Mountain and Yakima, in this case, Navajo Tribal Court jurisdiction is not "clearly foreclosed" by Price-Anderson. Moreover, it is for the Navajo Tribal Court to first determine whether the Navajo Court Plaintiffs have even asserted Price-Anderson claims
 
 
 [5]
 At oral argument, the mining companies contended that the Supreme Court's recent decision in Strate controlled this case. In Strate, the Supreme Court found that, absent a treaty or statute, an Indian tribe lacked jurisdiction over a dispute between nonmembers of the tribe when that dispute arose from an accident occurring on a state highway within the reservation. Strate, 520 U.S. at ---- - ----, 117 S.Ct. at 1407-08. The Court noted that, when a tort occurs on alienated land, the tribal court will have jurisdiction over the claim only where the tribe regulates one of two situations discussed in Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981):(1) consensual relationships between nonmembers and the tribe, or (2) conduct which "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Montana, 450 U.S. at 566, 101 S.Ct. at 1258-59
 We find Strate inapposite to the facts of this case because the incident in Strate arose from a traffic accident on a state highway within the tribe's reservation. The Strate Court placed great emphasis on the fact that the state highway was open to the public and controlled and maintained by the state. Strate, 520 U.S. at ----, 117 S.Ct. at 1414. Conversely, in this case the Navajo Nation retained tribal sovereignty over the land the mining companies occupied, which land was neither open to the public nor controlled or maintained by any entity other than the tribe. The Strate Court expressly declined to address cases, like the present one, where the disputed tort involved nonmembers of the tribe and occurred on tribal land. See id. at ----, 117 S.Ct. at 1408 ("We express no view on the governing law or proper forum when an accident occurs on a tribal road within a reservation.") (emphasis added). Because this case is distinguishable from Strate, we need not consider whether a Montana exception applies. It seems indisputable, however, that a claim involving uranium contamination poses a danger to the 'health or welfare of the tribe.'
 The dissent contends that Burlington N. R.R. Co. v. Red Wolf, 106 F.3d 868 (9th Cir.1996), vacated, --- U.S. ----, 118 S.Ct. 37, 139 L.Ed.2d 5 (1997) has expanded Strate, and that those two cases control the outcome here. In Red Wolf, we held that a railroad sued for a tort arising on a reservation must exhaust its tribal court remedies before a district court can exercise jurisdiction. The Supreme Court vacated our decision in Red Wolf and instructed us to reconsider our holding in light of Strate. But here, unlike in Red Wolf, there is no question that the Navajo Nation retained its sovereignty over the mine sites.
 
 
 [6]
 The mining companies also contend that Price-Anderson is the exclusive method for bringing nuclear tort claims because Price-Anderson provides a means of consolidating claims and ensuring a fair and equitable distribution of funds to all those affected by a nuclear incident. This claim is unavailing because it merely seeks to "infer" a jurisdictional prohibition where no "express" jurisdictional prohibition exists
 
 
 [7]
 In holding that Price-Anderson does not constitute an express jurisdictional prohibition, we need not consider the Navajo Court Plaintiffs' alternative claim that Price-Anderson does not apply because the mining companies had no indemnity agreement with the federal government. See Silkwood, 464 U.S. at 251-52 n. 12, 104 S.Ct. at 622-23 n. 12 ("Government indemnification is available only to those required to maintain financial protection ... and the liability limitation applies only to those who are indemnified.")